IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WAYNE S. LIPSCOMB            :       CIVIL ACTION
                             :
        v.                   :
                             :
PENNSYLVANIA BOARD OF PROBATION :
AND PAROLE, et al.           :       NO. 12-6373

MEMORANDUM

Bartle, J.                                    February 27, 2013

The plaintiff in this action is Wayne S. Lipscomb, the Administratrix of the Estate of Moses Walker, Jr. ("Walker"). According to the complaint, Walker, a Philadelphia police officer, was killed tragically in the early morning hours of August 18, 2012 by Rafael Jones ("Jones") while Walker was waiting for a bus after the conclusion of his shift. Jones, a parolee, had attempted to rob Walker at gunpoint.

The defendants are the Pennsylvania Board of Probation and Parole ("PBPP"), Michael C. Potteiger ("Potteiger"), its Chairman, as well as Jose Rodriguez ("Rodriguez"),[1] Rosa Hernandez ("Hernandez"), and Michelle Rivera ("Rivera"), who were parole agents. All the individuals were sued in their official and individual capacities.

Plaintiff has brought claims under 42 U.S.C. § 1983 as well as under the Pennsylvania Constitution and wrongful death

---

1. Plaintiff's complaint incorrectly identifies Juan Rodriguez. The defendant's proper name is Jose Rodriguez.

and survival statutes.  Liability under § 1983 is premised on the theory that defendants caused a state-created danger.[2]

Before the court is the motion of defendants PBPP and Potteiger to dismiss the complaint as well as a similar motion of defendant Rodriguez.  Defendant Hernandez has also filed a response stating that she does not oppose Rodriguez's motion and requesting also to be dismissed from the action if the court dismisses Rodriguez.  We will treat her request as a motion to dismiss.  After receipt of defendants' motions, plaintiff agreed to dismiss the action against PBPP and the action against Potteiger and Rodriguez in their official capacities and all state law claims against Potteiger and Rodriguez in their individual capacities.  Since plaintiff has not responded as to Hernandez, we will assume that plaintiff is treating her as she has Potteiger and Rodriguez.  That leaves for decision only the § 1983 claim against Potteiger, Rodriguez, and Hernandez in their individual capacities.

For present purposes, we must accept all well-pleaded facts as true.  In 2007, Jones was sentenced for carrying a firearm without a license to two to four years in prison by a

---

2. Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Pennsylvania court to be followed by three years' parole. Jones served his maximum prison sentence and was released on October 16, 2011. His parole began on that day. In February 2012, while on parole Jones was arrested and charged with robbing a man at gunpoint in the Germantown section of Philadelphia. The case was dropped after the victim failed to appear.

On July 25, 2012, as a result of the arrest, Jones was brought before a judge in the Court of Common Pleas of Philadelphia County for a parole hearing. During the hearing, the judge told Jones and Rodriguez, who was the parole agent assigned to Jones, that she would show no leniency regarding weekly drug tests to which she was ordering Jones to submit. She stated, "[t]here will be no positives, Mr. Jones... One positive, Agent Rodriguez, you drop the detainer." She added, "[w]ith your record, you cannot afford to think that you still make the rules. You do not. I do. Agent Rodriguez does.... So, unless you enjoy spending your years behind bars, it's time to get it together." The judge ordered Jones released under the supervision of Rodriguez and PBPP but subject to house arrest under electronic monitoring for a period of six months.

Although a telephonic "landline" is necessary at the home of a parolee for the implementation of electronic monitoring, Jones was released to a home that did not contain a such a telephone. Jones was given two weeks to have one installed so that the electronic monitoring condition of his parole could be carried out. Jones did not have a landline

installed and was not being electronically monitored as of August 18, 2012, when he killed Officer Walker.

On August 10, 2012, Jones further violated the terms of his parole because of a positive drug test. As a result, Rodriguez requested an arrest warrant on August 15, 2012 from his supervisors, defendants Hernandez and Rivera, who denied the request. Three days later, Jones killed Officer Walker in the course of attempting to rob him.

In their respective motions to dismiss, defendants argue that the complaint does not state facts, even if true, that can support liability against them under § 1983 for the death of Walker based on a state-created danger. In Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995), our Court of Appeals declared that a state actor can be held responsible under § 1983 for a state-created danger only if a four part test is satisfied:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

Id. at 1152.

We first focus on the third requirement of the test that there must have existed some relationship between the state and Walker, the plaintiff's decedent. What constitutes the necessary relationship in § 1983 actions has been the subject of

-4-

a number of decisions by the Supreme Court and our Court of Appeals.

The Supreme Court dealt with the issue in <u>Martinez v. California</u>. There, the complaint alleged that the state of California had released on parole a person who had been convicted of attempted rape. 444 U.S. 277, 279 (1980). He had been committed to a state mental hospital and then sentenced to twenty years in state prison. <u>Id.</u> After five years, he was released on parole and five months later killed a young girl. <u>Id.</u> at 279-80. In upholding the dismissal of the complaint against the state as not stating a claim under § 1983, the Supreme Court explained:

> Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board. <u>Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger</u>. We need not and do not decide that a parole officer could never be deemed to "deprive" someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law.

<u>Id.</u> at 285 (emphasis added) (citation and footnotes omitted).

Following <u>Martinez</u>, our Court of Appeals decided <u>Commonwealth Bank & Trust Co. v. Russell</u>, 825 F.2d 12 (3d Cir. 1987). In that case, a prisoner escaped from jail and killed a married couple. The executor of the couple's estate sued the prison and county officials under § 1983. The complaint alleged

that they knew about inadequate security at the jail and failed to remedy the situation. The court affirmed the district court's dismissal of the claim. It reasoned:

> Plaintiff argues that defendants' maintenance of the jail in a condition which made escape likely and the placement of Slingerland, a particularly dangerous prisoner, in that jail when it was in an unsafe condition created a situation that posed an immediate threat to the life and safety of individuals, such as the Lents, who resided in the community surrounding the jail. Plaintiff makes a sympathetic argument. It must fail because the residents in the communities surrounding the jail are part of the "public at large", referred to in Martinez, 444 U.S. at 285. They cannot reasonably be characterized as individuals who defendants knew "faced any special danger." Id.

Id. at 16.

Several years later, the Supreme Court focused on the state-created danger theory for liability under § 1983 in DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189 (1989). There, a four-year-old boy in Winnebago County, Wisconsin was severely beaten by his father, with whom he lived. Id. at 192-93. The boy's father finally beat him so severely that he suffered permanent brain damaged and was profoundly mentally disabled. Id. at 193. The county's department of social services ("DSS") had previously received various complaints that the boy was a victim of child abuse and took some steps to protect him, but it did not remove him from his father's custody. Id. at 192-93. The boy and his mother sued the county, DSS, and various individual DSS employees under § 1983.

Plaintiffs alleged that the defendants had violated the boy's rights under the substantive component of the Due Process Clause by failing to intervene to protect him against a risk of violence of which they knew or should have known. Id. at 193.

The Supreme Court in upholding the dismissal of the complaint concluded that the state played no part in the creation of the dangers that the boy faced nor did it do anything to render him more vulnerable to such dangers. Id. at 202. The Court did recognize that where special relationships are created or assumed by the state, certain constitutional rights may be implicated, and the state has an affirmative obligation to provide protective services. Id. at 198-99. For example, such duties arise where a person is a prisoner or has been involuntarily committed to a mental facility. Id. at 199-200.

Other than in limited circumstances of this nature, the Court explained that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. at 195. The Court observed that the language of the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." Id. Since no special relationship existed between the boy and the State, it had no constitutional duty to protect him.

As previously noted, our Court of Appeals addressed the state-created danger theory in Mark v. Borough of Hatboro, 51

F.3d 1137, 1138 (3d Cir. 1995). In that case, William Marley ("Marley"), a member of the Enterprise Fire Company ("Enterprise"), a volunteer fire company in the Borough of Hatboro, Pennsylvania (the "Borough"), set fire to and destroyed an automobile repair business owned by the plaintiff. Id. at 1138. The plaintiff sued Marley, Enterprise, the Borough, and several Borough employees under 42 U.S.C. § 1983 for damages resulting from the arson. Id. at 1140. Our Court of Appeals affirmed the grant of summary judgment in favor of Enterprise and the Borough and held that they could not be held responsible under § 1983. It stated:

> When the alleged unlawful act is a policy directed at the public at large -- namely a failure to protect the public by failing adequately to screen applicants for membership in a volunteer fire company -- the rationale behind the rule disappears -- there can be no specific knowledge by the defendant of the particular plaintiff's condition, and there is no relationship between the defendant and the plaintiff.

Id. at 1153.

In Kneipp v. Tedder, the Court of Appeals reiterated that the "state-created danger" theory is a "viable mechanism for establishing a constitutional violation" under § 1983. 95 F.3d 1199, 1201 (3d Cir. 1996). There, the parents of Samantha Kneipp ("Kneipp") alleged that late on a January evening, when Kneipp was in an obvious state of severe inebriation, police officers stopped her and her husband while her husband was attempting to bring her to their nearby apartment. Id. at 1201. While she was

being disruptive, they told her husband that he could leave to go home to relieve the babysitter.  Id. at 1202.  A few hours later, Kneipp was found unconscious.  Id. at 1203.  She suffered hypothermia, which caused a decrease in the amount of oxygen delivered to her brain.  Id.  This resulted in permanent brain damage impairing many basic bodily functions.  Id.  Kneipp's parents sued the City of Philadelphia and several police officers under § 1983 on the ground that the officers were aware of Kneipp's intoxication, assumed responsibility for her protection when they told her husband he could leave, affirmatively created a danger when they later abandoned her, and made her more vulnerable by interfering with the efforts of her husband to bring her to safety.  Id.

The Court of Appeals found that the "special relationship" required by the third element of a state-created danger claim as outlined in Mark was present under these circumstances and accordingly reversed the district court's grant of summary judgment in favor of the defendants.  It concluded:

> Here it is alleged that Officer Tedder, exercising his powers as a police officer, placed Samantha in danger of foreseeable injury when he sent her home unescorted in a visibly intoxicated state in cold weather.  A reasonable jury could find that Officer Tedder exerted sufficient control over Samantha to meet the relationship requirement.

Id. at 1209.  It further explained, "[t]he relationship requirement under the state-created danger theory contemplates

some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense." Id. at 1209 n.22.

The Court of Appeals elaborated on the standard set forth in Kneipp in Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997). There, a teacher was shot and killed in front of a classroom of children. Id. at 904. Her husband, as executor of her estate, claimed in his lawsuit under § 1983 that the school district had deprived the teacher of her right to be free from physical harm by leaving a back entrance to the school unsecured. Id. Citing Martinez and Mark, the court reiterated that the state-created danger theory of liability does not extend to "those instances where the state actor creates only a threat to the general population." Id. at 913. The court noted that a state-created danger is implicated in an action under § 1983 only where the conduct of the state actor has created a danger to a "discrete plaintiff" or to a "discrete class of plaintiffs." Id. at 914. As in other situations, courts must often draw lines in deciding when a threat is to the general population as opposed to a discrete class of plaintiffs. Id. In Morse, the Court of Appeals did not reach that question but upheld the dismissal of the complaint on other grounds. Id.

Plaintiff in the pending action does not argue that the state-created danger was directed specifically at Walker. Thus, we do not have before us a situation such as occurred in Kneipp. Instead, she contends that the danger was directed at a discrete class of persons of whom Walker was a part as "a police officer

acting in the line of duty who could be expected to draw his weapon in an effort to protect and serve the public when confronted with a violent felon wielding a loaded gun."

We disagree that the complaint describes any threat directed at a discrete class of people, in this case police officers. To the extent Potteiger, Rodriguez, or Hernandez acted to cause a danger as a result of Jones' presence on the street, they caused a threat to the general population. There is no allegation that Potteiger, Rodriguez, or Hernandez did anything which made Jones a special danger to a specific group such as the police or that Jones was more likely to cause harm to a discrete class of people than to the public in general. No reasonable inference can be drawn that Jones while on parole was more inclined to target police officers as his victims than anyone else in Philadelphia or beyond. If anything, it is more probable than not that Jones would shy away from encounters with law enforcement officials as a group. Significantly, the complaint does not aver that Walker was in uniform at the time of his death or that Jones otherwise knew that he was a police officer.

In sum, assuming that all the other elements necessary for a § 1983 action against Potteiger, Rodriguez, or Hernandez have been satisfied, any threat they created was to the general population and not simply to a discrete individual or discrete class of individuals. <u>Morse</u>, 132 F.3d at 913. Accordingly, plaintiff may not go forward with her complaint under § 1983 against Potteiger, Rodriguez, or Hernandez.

We reiterate that the death of Officer Moses Walker, Jr. was indeed a tragedy. Nonetheless, Potteiger, Rodriguez, and Hernandez, as state actors, may not be held liable for his death under the circumstances alleged. The motions of Potteiger, Rodriguez, and Hernandez to dismiss the complaint will be granted.